JANVIER, Judge.
Dale, Incorporated, as assignee of a claim for $275.01, representing the unpaid balance on two insurance premiums, alleged to be due by Mrs. Jane Killilea to Edgar A. Steiner and Arthur A. Steiner, doing business as Steiner Insurance Agency, which partnership assigned the claim to plaintiff, brought suit for the said amount against the said Mrs. Killilea, alleging that she is sometimes known as Mrs. Jane Pumilia.
Defendant admitted that the policy had been issued at her request, but averred that she had sold the property, a boat, in connection with which the policies had been issued and that Steiner Brothers had actual notice of the sale and had agreed to cancel the policies and that they had been can-celled in the normal and usual manner. She also averred that the plaintiff, Dale, Incorporated, had actual knowledge of the transfer of the vessel, was “fully informed as to the notice of cancellation,” and “that if proper notice was not issued to the principal insurance company, it was due to the negligence of the principal and/or their agents.” After making these allegations, defendant averred in the alternative “that the premiums have been paid in full.”
There was judgment in favor of plaintiff and against Mrs. Killilea for $181.26, and *147 she has appealed devolutively and suspen-sively.
One of the contentions of defendant is that the assignment of the claim, which originally belonged to Steiner Brothers, is not evidenced by a writing, and counsel argues that a writing is required in accordance with LSA-R.S. 9:3101. We find no such requirement. All that is required is that if the assignee desires to protect himself against payment by the debtor to the original creditor, there must be a written assignment and proper notice must be given.
The evidence tendered by the defendant is most confusing, but we glean from it the following:
Mrs. Killilea, desiring to have a boat constructed, employed Frank A. Scariano who operates a shipyard known as Scariano Boats at West End, in New Orleans, to build the vessel, and borrowed from a local bank $10,000 which was secured by mortgage on the vessel. She secured from the Steiner Insurance Agency the two policies in question; one covering what is known as Hull insurance and the other protecting the owner of the vessel against public liability. The premiums were to be paid monthly and ten monthly premiums were paid.
Apparently the vessel was completed and delivered in June, 1953', when the policies were issued.
Mrs. Killilea says that, about two months after the boat was completed, she sold it to Mrs. Carol Lee, Mrs. Lee being a secretary employed by Scariano Boats.
Mrs. Lee says that after she bought the vessel, which was on October 5, 1953, or about three and a half months after it was completed, she realized that the boat was not being used for the purpose for which it was built and that much cheaper insurance should be obtained, and she told Steiner many times to cancel the policies. Yet she says that what she asked- for was “a different kind of policy.” It thus appears that Mrs. Lee at one time in her testimony said that Mrs. Killilea had cancelled the policies at another time she said that she herself had later contacted Steiner many times to instruct him to cancel the policies and had still later said that what she wanted was-not a cancellation of the policies which had been issued but the issuance of “a different kind of policy.” In spite of all these varied statements, at another point in her testimony, she was asked: “Mrs. Lee you don’t deny that there was a balance of $264.64 due on the policies?” and she answered: “That is correct.”
On June 1, 1954, Mrs. Lee who, without any payment had bought the boat from Mrs. Killilea, sold it again apparently without any consideration to Frank J. Scariano, who had originally built it, and Scariano says that as soon as he acquired it, which was on June 1, 1954, he made arrangements for new insurance with a different insurance agency.
All of the witnesses placed on the stand by defendant seem to intimate that, since the boat was laid up for the last two months, of its first year of life, insurance on it was. not required and yet when Scariano acquired it in June, 1954, he immediately protected it with other insurance obtained from >ther agents.
There is a provision in one of the policies which requires written notice of' cancellation and though the other has no. such requirement, surely it could not be cancelled without some sort of notice to the insurance agent or to the insurance company. We are convinced from this record, that no such notice was ever given by Mrs., Killilea or by Mrs. Lee.
The trial Judge seems to have been convinced that no proper notices of cancellation were given. There is obviously no-manifest error in this finding.
The judgment appealed from is affirmed at the cost of appellant. .
Affirmed.