315 So.2d 801 (1975)
NICHOLS CONSTRUCTION CORPORATION
v.
L. M. SPELL and Spell's Welding Service, Inc.
No. 10363.
Court of Appeal of Louisiana, First Circuit.
June 30, 1975.
*802 Charles S. McCowan, Jr., Baton Rouge, for appellant.
Richard P. Massony and Richard L. Muller, Covington, for appellee.
Before LOTTINGER, COVINGTON and BAILES, JJ.
COVINGTON, Judge.
This is a suit by Nichols Construction Corporation against L. M. Spell and Spell's Welding Service, Inc., claiming damages in the amount of $14,293.14, together with interest and costs, representing the repair costs to plaintiff-appellant's crane which was damaged in an accident on June 12, 1972. L. M. Spell and Spell's Welding Service, Inc., made defendants herein, filed an answer and also reconvened, contending that Nichols Construction is indebted unto them in the amount of $2,200.00 for damages sustained in connection with a cement silo which was damaged because Nichols allegedly sent a defective crane to Spell with two men, one of whom operated same and was negligent.
Nichols contends that Spell's Welding Service, Inc., or L. M. Spell, d/b/a Spell's Welding Service, ordered a crane to lift a certain cement silo and represented the silo to weigh between 15 to 20 tons or 30,000 to 40,000 pounds, when in fact the silo weighed considerably more, making the defendant negligent and liable when the crane was not only unable to lift and lay the silo down, but rather causing both the crane and silo to turn over. Nichols proceeded on the dual theory of Spell's liability on a contract of indemnity because of an agreement signed by L. M. Spell and, also, under the "borrowed servant" doctrine.
At the start of the trial defendant, Spell's Welding Service, Inc., filed exceptions of no cause of action and no right of action, alleging that the corporation came into existence approximately six (actually about four) months after the accident occurred. The motion, by consent of counsel, was referred to the merits. After the trial the judge rendered a decision rejecting the demands of both plaintiff and the defendants and furthermore maintained the exceptions of no right and no cause of action filed by L. M. Spell's Welding Service, Inc.
From the decision as rendered, the plaintiff has perfected this appeal, relying upon four specifications of error which are listed as follows:
1. The trial court erred in failing to find that John DuPont, the crane operator, was the "borrowed servant" of defendant, Spell, and that defendant, Spell, was responsible for the *803 damages to plaintiff-appellant's crane.
2. The trial court erred in not finding that defendant, Spell, was negligent in failing to report the true weight of the load and/or that he was negligent in directing the lifting operation and that this negligence was the proximate cause of appellant's damages.
3. The trial court erred in not finding that defendant, Spell, had a contractual obligation of indemnity plaintiff-appellant for the damages to its equipment.
4. The trial court erred in maintaining the exceptions of no cause of action and no right of action filed by L. M. Spell Welding Service, Inc.
The defendant has answered this appeal, praying that the judgment be modified to award their damages in the amount of $2,200.00 sought by reconvention.
The appellant, in its brief, cites many cases to substantiate its position that the crane operator was a "borrowed servant" of defendant. Among those cited are Brown v. B & G Crane Service, Inc., 194 So.2d 746 (La.App. 4th Cir. 1967) and Truitt v. B & G Crane Service, Inc., 165 So.2d 874 (La.App. 4th Cir. 1964), which cases are factually different from the case under consideration. In those cases, it was conclusively proven that the crane operators were being directed by the lessee at all stages of their employment and were under the complete and direct control of the lessee. Appellant also cited the case of Universal Engineers and Builders, Inc. v. Lafayette Steel Erec. Corporation, La.App., 235 So.2d 612, writ denied, 256 La. 854, 239 So.2d 358, which the trial judge interpreted against its interest, and we agree with the interpretation of the trial judge. In the cited case it was stated that:
"If the general employer seeks to avoid liability on the ground that his employee is the `borrowed servant' of another, then the burden of proof rests upon the general employer to show that the relationship of master and servant which previously existed between the general employer and employee has been suspended, that a new such relationship has been created between the borrowing employer and that employee, and that such new relationship was in existence at the time the accident occurred."
There is a legal presumption that the general employer retains control over his regular employees. A party who alleges or contends that the employee has become the "borrowed servant" of another bears the burden of proof. He must establish by a preponderance of the evidence that the right of the general employer to control the employee has terminated, and that the right to control him has been assumed by the borrowing employer. A mere showing of a division of control is not sufficient to meet this burden of proof; Etienne v. Home Indemnity Co., 307 So.2d 654 (La.App. 3rd Cir. 1975), citing Pagitt Well Service, Inc. v. Sam Broussard, Inc., 293 So.2d 631 (La.App. 3rd Cir. 1974); Barrois v. Service Drayage Company, 250 So.2d 135 (La.App. 4th Cir. 1971), writs refused 259 La. 805, 806, 253 So.2d 66; Benoit v. Hunt Oil Company, 219 La. 380, 53 So. 137 (1951).
Whether a person is a "borrowed servant" is an issue of fact; Leblanc v. Roy Young, Inc., 308 So.2d 443 (La.App. 3rd Cir. 1975). The trial judge had ample testimony to demonstrate that Dupont, the crane operator when the mishap occurred, was not supervised or directed in the performance of his operation of the crane. He was given instructions as to what the defendant desired of him, but the method of approach was left primarily or completely to said operator.
Plaintiff-appellant contends, further, that the trial judge erred in not finding *804 Spell negligent in failing to report the true weight of the load, and that he was also negligent in directing the lifting operation and that this negligence was the proximate cause of appellant's damages.
We have examined the record closely and the only directing of Dupont that we found is when defendant gave Dupont a signal to lift or take up the slack for his first lift. This accident did not occur on the first lift but rather when the operator attempted to lay the silo over. At Tr. page 43 we find the following testimony of L. M. Spell:
"Q. Then what did you tell him you wanted done with it?
A. Well, I had already told him we wanted to lay it down.
Q. Did you tell him where you wanted it to lay down?
A. No, Sir.
Q. Well, how was he to know where to lay it down?
A. I told him I wanted it laid down so he was going to lay it down wherever he wanted to.
Q. Did you tell him which side to lay it down on?
A. No, Sir.
Q. Did it matter to you which side?
A. No, Sir, it didn't matter.
Q. You just wanted it laid down?
A. I gave it to him, his responsibility, his Crane. He knew what he was doing so I let him."
We feel that Spell erred in his estimating of the weight of the silo, but the fact that Dupont realized that the silo was heavier than he first anticipated will make the plaintiff-appellant equally at fault with Spell.
The third specification of error complained of in this appeal is that the trial court erred in not finding that Spell had a contractual obligation to indemnify plaintiff-appellant for the damages to its equipment. The trial court felt that since the indemnity contract was presented to Spell after the accident, and since he signed it because the man who handed it to him represented that the employees of plaintiff needed it signed in order for them to get paid, it was an insufficient contract entered into by the parties under the circumstances. In view of the fact that we have determined that Dupont was negligent, and that his negligence is attributable to the plaintiff, we find no error in the court's ruling.
In Arnold v. Stupp Corporation, 205 So.2d 797 (La.App. 1st Cir. 1967) we held that contracts of indemnity will not be construed to indemnity against losses resulting to the indemnitee through his own negligent acts, where such intention is not expressed in unequivocal terms. The indemnity contract herein complained of did not so provide.
Plaintiffs' contention that the maintaining of the exceptions of no right or cause of action was error is without merit. In his brief, the plaintiff-appellant alludes to the fact that because the corporation used some of the same equipment as did Mr. Spell before he formed his corporation and assumed some of the jobs he had in progress, such actions, ipso facto, made the business a de facto corporation. We disagree.
Defendant-appellee answered this appeal, praying for an amount he claimed in his original reconventional demand, or $2,200.00. The prayer has added significance when one reads the record and finds that the defendant, plaintiff-in-reconvention, stipulated his damages amounted to $1,654.00, Tr. 181. The trial court stated in his written reasons for judgment that ". . . Spell appears to have had a degree *805 of responsibility in this venture and assuming arguendo that Dupont was negligent this Court would find that Spell was contributorily negligent in allowing things to get to the point where the accident occurred." There is ample evidence in the record to support that conclusion.
Accordingly, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
Affirmed.