JASPER E. JONES, Judge.
This is a suit to recover from the unit operator the value of minerals produced from unleased land within the Moorings-port Unit of the Sentell Field located in Caddo and Bossier Parishes, Louisiana. The plaintiff is H.W. Saunders, II. The defendants are Howell Petroleum Corporation (Howell) and Carlson Petroleum (Carlson). Plaintiff appeals contending the trial court erred in granting Carlson’s motion for partial summary judgment which rejected plaintiffs claim for all production from the property until the date plaintiff acquired title to the property. We reverse.

Background Facts

A field wide production unit for the Mooringsport Unit, Sentell Field, Caddo and Bossier Parishes, was established by order of the Louisiana Department of Conservation on June 20, 1973. This order designated Hanover Management Company (Hanover) as unit operator. Hanover subsequently merged with Carlson with the new entity retaining the name of Carlson Petroleum.
On August 3, 1978, plaintiff purchased a tract of Caddo Parish land located within the Mooringsport Unit from Ronnie and Betty Jean Youngblood. On November 12, 1985, the Youngblood’s executed an act of ratification acknowledging the sale to plaintiff and declaring their intent to convey to plaintiff all real rights in the property as well as causes of action related to the land. The act provides in pertinent part:
“FURTHER DECLARE that it was my/our specific desire and intent to (GRANT, BARGAIN, SELL, CONVEY ;AND DELIVER unto Grantee named in said INSTRUMENT all of my/our RIGHT, TITLE AND INTEREST in the above described property, ALL REAL RIGHTS, and rights and causes of action, including but not limited to: ANY AND ALL TRESPASS, OIL, GAS AND MINERAL OPERATIONS, INCLUDING CLAIMS AGAINST ANY AND ALL OIL, GAS AND MINERAL OPERATORS AND/OR PRODUCERS FOR SURFACE DAMAGES, SALT WATER SPILLAGE, PRODUCTION, ACCOUNTING, TRESPASS, VIOLATION OF EASEMENT, SERVITUDE, RIGHT OF WAY or any other rights incidental to the ownership of the above described property necessary for the full and perfect enjoyment of the premises previously conveyed.”
Neither plaintiff nor the Youngbloods ever executed a mineral lease on the property in question.
On July 10, 1979, Carlson resigned as unit operator of the Mooringsport Unit and Howell became the new operator. Plaintiff filed suit on December 13, 1984, against Carlson and Howell asserting his right to an accounting and a proportionate share of the minerals produced from the unit from the date of the Department of Conversation’s order to the date of suit and for future production. Plaintiff subsequently compromised his claim against Howell and dismissed it from the lawsuit, reserving his rights against Carlson.
Carlson filed a motion for partial summary judgment contending there was no genuine issue of fact that plaintiff had no claim for the production which occurred prior to the date he acquired title to the land and as to this part of plaintiff’s claim it was entitled to a judgment as a matter of law.
The sole issue on appeal is whether the trial judge erred in granting Carlson’s motion for partial summary judgment.
Plaintiff contends mineral rights are real rights which are transferred with the ownership of the property, unless reserved or conveyed separately. He points out Carlson, as unit operator from 1973 to 1979, produced and sold minerals from the Moor-ingsport Unit without a lease from the Youngbloods. Plaintiff contends by purchasing the property, he acquired the Youngbloods’ right to the production which occurred during the time they owned the *473 land. Also, plaintiff contends the Young-bloods specifically assigned to him their right to recover misappropriated production and to obtain an accounting for the value or quantity of such production. For these reasons, plaintiff contends the trial court erred in granting Carlson’s motion for partial summary judgment.
Carlson contends, in its motion for summary judgment, plaintiff did not become the owner of the minerals produced before he purchased the land. Carlson argues, as landowner, plaintiff became the owner only of the minerals which were reduced to possession after he purchased the land. Carlson argues for the first time in brief that plaintiffs settlement with Howell and the dismissal of Howell from the lawsuit is a basis for the summary judgment. Carlson makes no such contention in his motion for summary judgment. Carlson further contends the act of ratification executed by the Youngbloods subsequent to the sale merely affirms the rights acquired by plaintiff on the date title was transferred.
The trial judge, in written reasons, concluded the right to recover revenues for minerals reduced to possession belongs exclusively to the landowner at the time production occurred. Because plaintiff did not own the land when the production occurred, the trial judge concluded he had no right to such production and granted Carlson’s motion for partial summary judgment. The trial judge noted plaintiff, by purchasing the property, only acquired the right to explore and develop it for the production of minerals and to reduce them to possession. The trial judge concluded, as an additional reason for granting the summary judgment, that plaintiff’s release of Howell also released Carlson.
Summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. Only when reasonable minds must inevitably conclude that mover is entitled to a judgment as a matter of law on the facts before the court is a summary judgment warranted. Thornhill v. Black, Sivalls and Bryson, Inc., 394 So.2d 1189 (La.1981). The documents supporting the motion for summary judgment must be viewed in the light most favorable to the party opposing the motion. Vermilion Corporation v. Vaughn, 397 So.2d 490 (La.1981); Marzula v. White, 431 So.2d 858 (La.App. 2d Cir. 1983); Hastings v. International Service Ins. Co., et al, 490 So.2d 656 (La.App. 2d Cir.1986).
An assignment is a valid transfer of rights. LSA-C.C. art. 2642;[1] See also LSA-R.S. 9:3101, et seq.; Dale, Inc. v. Killilea, 94 So.2d 146 (Orl.La.App.1957); Rond v. Sims, 355 So.2d 591 (La.App. 4th Cir.1978), writ den., 357 So.2d 1164 (La.1978). An assignment or transfer of credits and other incorporeal rights is a species of sale. Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956).
Plaintiff also filed a motion for partial summary judgment and his motion and defendant’s motion were considered by the trial court at the same hearing. Attached to plaintiff’s motion was a copy of an act dated November 12, 1985, wherein the Youngbloods acknowledged and ratified their sale to the plaintiff dated August 3, 1978. This document declared that the vendors in the 1978 sale did “... SELL, CONVEY AND DELIVER ... all ... causes of action, including ... TRESPASS, OIL, GAS AND MINERAL OPERATIONS, INCLUDING CLAIMS AGAINST ANY AND ALL OIL, GAS AND MINERAL OPERATORS AND/OR PRODUCERS FOR ... PRODUCTION . i. incidental to the ownership of the above described property ...” Plaintiff contends this act gives him the right to recover for production which occurred before he bought the land and Carlson contends the act does nothing *474 more than affirm the rights plaintiff acquired when title was transferred to him.
The trial court found plaintiff was not the owner of the claim for the value of minerals produced from the unleased land before he acquired title to the land and this conclusion is supported by LSA-R.S. 31:6[2] and LSA-R.S. 31:7.[3] See also Martel v. Hunt, 195 La. 701, 197 So. 402 (1940). We are in accord with the basic rule enunciated by the trial court but find it fails to support the summary judgment because there is evidence from which it could be found on the trial of this case that the Youngbloods have assigned to the plaintiff the right to recover from Carlson the value of the production which occurred before plaintiff acquired title to the property. Though the trial court gave some consideration to the ratification document attached to plaintiffs motion for summary judgment, it failed to give it the legal significance it should have received. In this document plaintiffs grantors, at the very least, attempted to assign to plaintiff their cause of action against Carlson for the value of the minerals produced from their land before they conveyed it to plaintiff.
Whether the Youngbloods assigned their right to recoyer the value of their mineral production to plaintiff is a genuine issue of material fact which must be resolved at trial and the trial judge was in error in granting Carlson’s motion for partial summary judgment.
The trial judge supports his summary judgment by concluding plaintiffs release of Howell also released Carlson from any claim plaintiff had against it. Defendant’s motion for summary judgment contained no such contention nor were there any affidavits or other documents attached to said motion or otherwise contained in the record which would support a factual basis for this conclusion by the trial court. It cannot be said that it was established that there was no genuine issue of fact that Carlson received a release of plaintiff’s claim against it.
For the foregoing reasons, the summary judgment appealed is reversed and the case is remanded for further proceedings in accordance with law. Assessment of costs will await final determination on the merits.
REVERSED and REMANDED.

. Article 2642 provides:
"In the transfer of credits, rights or claims to a third person, the delivery takes place between the transferrer and the transferree by the giving of the title.”

. LSA-R.S. 31:6. Right to search for fugitive minerals; elements of ownership of land
Ownership of land does not include ownership of oil, gas, and other minerals occurring naturally in liquid or gaseous form, or of any elements or compounds in solution, emulsion, or association with such minerals. The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership.

. LSA-R.S. 31:7. When minerals reduced to possession
Minerals are reduced to possession when they are under physical control that permits delivery to another.