501 So.2d 911 (1987)
Robert M. FERGUSON
v.
Ronnie LAMBERT, B & G Crane Service, Inc., and Liberty Mutual Insurance Company.
No. 86-CA-438.
Court of Appeal of Louisiana, Fifth Circuit.
January 12, 1987.
Frederick J. Gisevius, Jr., David E. Caruso, Jr., New Orleans, for Robert M. Ferguson, plaintiff-appellant.
*912 Borrello, Huber & Dubuclet, Bruce J. Borrello, Metairie, and Claude D. Vasser, New Orleans, for B & G Crane Service, Inc., and Liberty Mut. Ins. Co., defendants-appellees.
Before CHEHARDY, C.J., and GRISBAUM and DUFRESNE, JJ.
CHEHARDY, Chief Judge.
Plaintiff, Robert M. Ferguson, appeals from a summary judgment granted in favor of defendants, Ronnie Lambert (Lambert); B & G Crane Service, Inc. (B & G); and Liberty Mutual Insurance Company. The plaintiff, who was employed by Mechanical Construction Company (Mechanical) as a rigger, was injured in the performance of his duties. His injury was allegedly caused by the negligence of Lambert, a crane operator employed regularly by B & G. Plaintiff sued Lambert as a third-party tort-feasor and B & G on the basis of vicarious liability. The issue raised by the motion for summary judgment is whether Lambert was a borrowed servant of Mechanical, which would restrict plaintiff's recovery to workers' compensation. Because of our findings herein, we reverse.
Plaintiff was hired by Mechanical, a contractor, as a rigger on a job located at the Shell Chemical Plant in Norco, Louisiana. A B & G crane and its two-man crew, consisting of an operator and oiler, were also performing work for Mechanical pursuant to a rental agreement. The crane, a large motor-driven piece of equipment designed for lifting and moving large objects, was being used to transport oil, gas, and chemical containers known as "vessels."
Shortly before the accident, the B & G crane was being driven by the oiler, Norman Rousell, backward down a side road of the plant. The vehicle was on its way to disposing of an empty vessel. Prior to reaching its objective, the crane was forced to stop because overhanging telephone wires obstructed the passage of the crane's gantry, an arm-like structure attached to the top of the crane. In an effort to remedy the situation, plaintiff climbed to the top of the crane's cab and lifted the wires with his hands. The vehicle then resumed its progress. Before plaintiff was able to safely descend from the cab of the moving crane, the operator, Ronnie Lambert, proceeded to "boom up" (raise the boom attached to the gantry). The vehicle lurched and plaintiff attempted to maintain his balance. In doing so he placed his gloved hand on a cable attached to the gantry. His glove snagged on the cable and his hand was pulled into the sheaves. As a result his fingers were amputated, and the nerves and muscles of the hand were severely injured.
On appeal, plaintiff asserts that the summary judgment was improperly granted because several disputed issues of material fact exist. In particular, he argues that the borrowed servant issue is a factual question depending upon which company maintained control over the crane and its crew. He further argues that the question of control is disputed as evidenced by the depositions and affidavits submitted in conjunction with the motion.
Defendants, on the other hand, argue the motion was properly granted. In addition to citing the record in support of their contention, defendants cite several previous cases which involved B & G and disposed of the question in B & G's favor.
As pointed out by plaintiff, summary judgment is not a substitute for trial, but is properly granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966. Gatlin v. Coca-Cola Co., 461 So.2d 452 (La.App. 5 Cir.1984). Where contradictions on factual issues are created by depositions, and affidavits state conclusions of law rather than evidentiary facts, a party is not entitled to summary judgment. Thompson v. So. Central Bell Telephone Co., 411 So.2d 26 (La.1982). Any doubt concerning a dispute as to a material fact must be resolved against the granting of the motion.
*913 Brown v. B & G Crane Service, Inc., 172 So.2d 708 (La.App. 4 Cir.1965); Kinney v. Hutchinson, 449 So.2d 696 (La.App. 5 Cir. 1984).
In order to prevail on the issue of control, the party alleging the employee is a borrowed servant must show that the relationship between the "general" employer and the worker has been suspended, and that a new and like relationship has been created between the worker and the "special" employer. Marzula v. White, 431 So.2d 858 (La.App. 2 Cir.1983). The most commonly employed test in this regard is the "right of control," which includes a determination of whether the general employer has relinquished its right to control the employee. Lacombe v. Duke Transportation, Inc., 449 So.2d 708 (La.App. 3 Cir.1984). Other factors found to be relevant to the issue of control include who has the right to select and discharge the employee; who has the right to supervise and direct the employee's work and the method in which it is to be done; and who pays the employee. Johnson v. Alexander, 406 So.2d 1378 (La.App. 3 Cir.1981), reversed on other grounds; Dupre v. Sterling Plate Glass & Paint Co., Inc., 344 So.2d 1060 (La.App. 1 Cir.1977), writ denied 347 So.2d 246 (1977). In weighing these factors, however, a distinction is made between authoritative direction and control and mere suggestion as to detail. Brown v. B & G Crane Service, Inc., supra. It is not sufficient for the general employer to simply show a division of control. Marzula v. White, supra.
The worker's status as a borrowed employee has consistently been held by the courts to be a question of fact, and in considering the motion for summary judgment on this question, all doubts should be resolved against the granting of the motion, even if the trial court has reservations as to plaintiff's contentions. Brown v. B & G Crane Service, Inc., supra.
In this case, three affidavits and nine depositions were presented in conjunction with the motion for summary judgment. The affidavits assert that the B & G crew operated under the exclusive control of Mechanical; that no B & G supervisory personnel were at the jobsite; and that the crew and crane were working on the site pursuant to a rental agreement with Mechanical.
No dispute appears from the record in regard to the rental agreement. However, the depositions indicate that a B & G supervisor may have been at the jobsite. Although Richard Stansbury, the alleged supervisor, was unable to remember whether he held the supervisory position at that time, Lambert and Rousell indicated Stansbury was safety supervisor when the incident occurred. The testimony contradicts the affidavits and may have an effect on the deposition of the issue of control.
In regard to the control question, the deposed witnesses agreed upon several facts. They concurred that B & G was responsible for training and choosing the men to operate the crane, for paying the crew's wages, for determining the amount of their wages, for deducting Social Security and other taxes, and for providing insurance. In addition, it was undisputed that B & G retained the right to fire the personnel operating the B & G cranes.
On the other hand, the witnesses stated that Mechanical's authority extended to instructing the crew as to where to move the crane for loading and unloading; which vessels to move; and giving hand signals to the crew during the process of loading, unloading or moving the crane from one location to another. The witnesses also agreed that Mechanical's authority did not extend to the operation or maintenance of the crane. Control over the crane was solely vested in the operator, the ranking member of the two-man crew.
Furthermore the testimony showed the operator was empowered to refuse directions he believed created a safety hazard. That authority included the right to prevent other workers from boarding the crane for safety reasons. If in doubt, the operator was required to contact a B & G supervisor for instructions. Likewise, if a dispute occurred between the crane crew *914 and the job foreman for any other reasons, the operator was expected to contact a B & G supervisor. In the event the job foreman was dissatisfied with the crew members, he had the authority to stop the work, but was required to contact B & G personnel for replacements.
With regard to removing obstacles in the crane's path, Fredrick Grilletta, B & G's president, and Lambert asserted that Dixie Walters, the job foreman, had final authority, whereas Walters claimed it was Lambert's prerogative. Discussing the events leading to this accident, Lambert stated he and Walters conferred about the problem of the overhanging wires immediately prior to the accident, and that he (Lambert) suggested lowering the gantry. He stated Walters overrode his suggestion opting to send two Mechanical employees to lift the wires. Dixie Walters denied that the discussion occurred. He stated he was not near the crane when plaintiff ascended the vehicle. He further denied that his authority would have extended to deciding what steps should be taken to avoid the overhanging lines, even had he been nearby. He insisted the operator was solely responsible for such decisions.
The testimony indicates that the crane used in this case is a dangerous piece of equipment, requiring two skilled people for its operation. It is constructed in such a way that one person controls the levers which operate the lifting mechanisms, while the other member of the crew drives the vehicle. However, because of the manner in which it is constructed, the crew members function with impaired vision. Thus they require assistance from workers on the ground to direct their movements. While some of the witnesses analogized the activities of each company's employees to that of a taxicab and its driver, the B & G officials rejected the analogy contending Mechanical had full control over B & G's personnel.
As we noted previously, defendant urges this court to uphold the summary judgment citing previous cases with similar facts, which held a crane crew to be the borrowed servant of the special employer. B & G Crane Service v. Thomas W. Hooley & Sons, 80 So.2d 369 (La.1955); Truitt v. B & G Crane Service, Inc., 165 So.2d 874 (La. App. 4 Cir.1964); Brown v. B & G Crane Service, Inc., 194 So.2d 746 (La.App. 4 Cir. 1966). However, those decisions were rendered, as pointed out by plaintiff, after a trial on the merits. In fact, the court in Brown v. B & G Crane Service, Inc., id., rejected the identical argument insofar as it related to a motion for summary judgment and reversed the summary judgment granted to defendant in that case. In doing so, the Brown court stated, and we agree, that each case must be considered individually, each litigant entitled to his day in court, and thus, prior cases involving the identical defendant and parallel facts cannot serve as a predicate for the motion for summary judgment.
After reviewing the record, the affidavits and depositions in this case, we find that the issue of control has yet to be resolved. Because the question of control is a genuine issue of material fact still in dispute, we hold that the motion for summary judgment was improperly granted.
Accordingly, the summary judgment is hereby reversed and the case is remanded for further proceedings consistent with this opinion. Costs are to be paid by appellee.
REVERSED AND REMANDED.